UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA FORSTER,<br><br>        Plaintiff,<br><br>   v.<br><br>STEPHANIE CLENDENIN, et al.,<br><br>        Defendants. | Case No.: 1:22-cv-01191 CDB (PC)<br><br>**FIRST SCREENING ORDER** |

Plaintiff Joshua Forster is a civil detainee[1] proceeding *pro se* and *in forma pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983.

**I.     SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

---

[1] Individuals detained pursuant to California Welfare and Institutions Code § 6600 *et seq.* are civil detainees and are not prisoners within the meaning of the Prison Litigation Reform Act. *Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000).

## II. PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id.* (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of *pro se* prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under

2

1  section 1983, a plaintiff must show a causal connection or link between the actions of the
2  defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*,
3  423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the
4  deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative
5  act, participates in another's affirmative acts, or omits to perform an act which he is legal required
6  to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740,
7  743 (9th Cir. 1978) (citation omitted).

### C. Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. C'nty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other*

3

1  *grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

2      To prove liability for an action or policy, the plaintiff "must ... demonstrate that his
3  deprivation resulted from an official policy or custom established by a ... policymaker possessed
4  with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d
5  707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between
6  such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v.*
7  *Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the
8  involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v.*
9  *Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

10     **III.    DISCUSSION**

11     **A.  Plaintiff's Complaint**

12      Plaintiff is currently housed at Coalinga State Hospital (CSH) in Coalinga, California
13  where the events in the complaint are alleged to have occurred. Plaintiff names Stephanie
14  Clendenin, Director of Department of State Hospitals and Brandon Price, Executive Director at
15  CSH, as Defendants in this action. (Doc. 1 at 1, 3.) Both Defendants are sued in their individual
16  capacities. (*Id.* at 3.) Plaintiff seeks relief in the form of damages totaling $1,000,000 and "any
17  other injunctions the court deems appropriate to protect both state and federal constitutional
18  rights." (*Id.* at 9.)

19     **B.  Plaintiff's Factual Allegations**

20      Plaintiff contends prisoners housed by the California Department of Corrections and
21  Rehabilitation (CDCR) are given "internet capable devices and internet access," allowing those
22  prisoners "a better quality of life, a greater chance to successfully reintegrate back into society
23  upon release, with a higher probability of rehabilitation." (Doc. 1 at 4.) Plaintiff alleges
24  Defendants have not adopted "the above program or anything like it for the Plaintiff." (*Id.*)
25  Plaintiff further asserts that "[p]atients under the same civil process as this Plaintiff (WIC) that
26  are out on conditional release (meaning still in custody and treatment) have individualized
27  conditions that allow" them to "have internet capable devices and internet access" but Defendants
28  have denied Plaintiff "the same individualized conditions." (*Id.*) Next, Plaintiff contends CDCR

4

parolees "have individualized conditions of parole" that allow them access to electronic devices, but Defendants have denied Plaintiff "the same individualized conditions." (*Id*.) Further, Plaintiff contends "CDCR prisoners are allowed to purchase and wear personal clothing," but that Defendants have denied Plaintiff the ability "to own and wear the same selective type of personal clothing prisoners are allowed." (*Id*.) Plaintiff asserts CDCR prisoners are offered educational and vocational opportunities he is not offered by Defendants. (*Id*.) Plaintiff contends those few programs that were offered at CSH have been cut. (*Id*.) Plaintiff asserts "Defendant further gives far less money to a patient when they leave the hospital back into society than prisoners get." (*Id*.) Next, Plaintiff contends CSH "used to allow nutritional supplements for patients" where individually approved by a treatment team, but now CSH "has disallowed all supplement and made it a blanket denial." (*Id.* at 4-5.)

Plaintiff contends that from October 2017 to present, he "has experienced a growing list of disallowed property/items based on Defendants' "speculative assertion of a need to deter acts that are already criminal in nature and/or 'safety and security' issues." (Doc. 1 at 5.) Plaintiff contends the "causation for this redaction of allowable property/items has not been individualized" to him. (*Id.*) Next, Plaintiff asserts the CSH "patient phone system" in his housing unit does not provide "reasonable access to make or receive confidential phone calls when needed" and that the CSH "package program over the last several years has become more restrictive and is now similar to the package program implemented by CDCR for prisoners." (*Id*.)

Plaintiff maintains that during his entire stay at CSH, Defendants have failed to provide him with adequate mental health treatment, resulting in his not being provided "a reasonable expectation to regain his freedom." (Doc. 1 at 5.) He states his "confinement has gone [from] a priority of forensic treatment, to a non-forensic facility of just confinement." (*Id*.) Moreover, Plaintiff contends Defendants "have closed ancillary groups," rotating facilitators "from group to group regularly causing disruption in treatment," and allowing facilitators to "end group early or close the group for the day," making treatment "a non-priority." (*Id*.) Plaintiff alleges the reality of treatment offered is different than what Defendants state "on paper." (*Id*.) Plaintiff contends there "is a disconnect between what the Department of State Hospital evaluators think the

treatment is like" and what is "actually offered or continually changing." (*Id*.) Plaintiff asserts that as a result he is not given "a fair evaluation when the evaluators come to CSH and update Plaintiff's evaluations." (*Id*.) He contends there is a "shortage of facilitators, groups and hours of treatment have diminished." (*Id*.) Plaintiff argues the treatment program offered at CSH "is far below recommendations found in 'Sex Offender Civil Commitment Program Network' (SOCCPN)" and that Defendants' treatment program "fails as to the ratio of facilitators, hours of treatment per week and other categories." (*Id*. at 5-6.)

Plaintiff asserts his personal liberty is restricted by the treatment groups, that the structure of the groups does not allow him to "present his assignments every week or every month" and that his treatment has been "stalled and not moving forward at a reasonable speed." (Doc. 1 at 6.) Plaintiff contends the groups are "getting more restrictive," start early or late, and the group sessions are consistently cancelled and involve "a ratio that is unreasonable." (*Id*.)

### C. Plaintiff's Claims

#### Claim One

Plaintiff's first cause of action is untitled; however, he cites to the California Code of Regulations and the Due Process clause. (Doc. 1 at 6-7.)

Plaintiff contends Defendant Clendenin is "tortuously liable" because she has "created and maintained Plaintiff's conditions of confinement such that they are punitive in nature." (Doc. 1 at 6.) Plaintiff alleges Clendenin has "failed to adhere to the mandates of CCR Title 9, §§880-884 in that her actions reflect a blanket application to all patients without individualized consideration" to Plaintiff. (*Id*.) Further, Plaintiff contends Clendenin has "failed to follow state and federal statutory and decisional law" and "the punitive nature of her action where Clendenin's objective was/is to deter conduct already addressed by Penal Code statutes or in retribution based on action of other patients." (*Id*. at 6-7.) Plaintiff asserts the restrictions are "supported by a speculative need for 'safety and security' where this term is used loosely and not in accordance with CCR Title 9, §§880-884, but instead is used as CDCR does for its prisoners (prisoners can be subjected to conditions amounting to punishment)." (*Id.* at 7.) Plaintiff further contends Clendenin has failed to insure Plaintiff's "conditions of confinement are less restrictive than prisoners and failed

6

1    to take less restrictive options." (*Id.*) He asserts all "statutory and decisional laws cited herein are

2    well established and it is reasonable to expect that Clendenin is/was aware that they exist and that

3    she is/was not in compliance." (*Id.*) Plaintiff contends Clendenin "is the moving force of

4    violations" of his due process rights protected by the Fourteenth Amendment. (*Id.*)

### *Due Process: Conditions of Confinement*

To state a claim that the conditions of his confinement violate his due process rights under the Fourteenth Amendment, a plaintiff must allege facts showing the conditions amount to "punishment." *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004). Punitive conditions of confinement are those that are either expressly intended to punish or those that are "excessive in relation to the alternative purpose [for confinement]." *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004) (quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)).

"Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982). A civilly committed individual's right to constitutionally adequate conditions is protected by the substantive component of the Due Process Clause of the Fourteenth Amendment. *Id.* at 315. To determine whether these substantive due process rights have been violated, the Court must balance the individual's "liberty interests against the relevant state interests." *Id.* at 320-21. The proper standard in determining whether a condition or restriction is constitutional for a civilly committed individual is whether "professional judgment in fact was exercised," rather than the "deliberate indifference" standard used for Eighth Amendment cruel and unusual punishment claims brought by prisoners. *Id.* at 312 n.11, 322. "[D]ecisions made by the appropriate professional are entitled to a presumption of correctness," and "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323-24. The Ninth Circuit has analyzed such conditions of confinement claims under an objective deliberate indifference standard. *See Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (adopting objective deliberate indifference standard based on

7

*Kingsley v. Hendrickson*, 576 U.S. 389 (2015), to evaluate failure to protect claim brought by pretrial detainee). That standard demands that:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro*, 833 F.3d at 1071.

Liberally construing Plaintiff's complaint, Plaintiff plausibly alleges a conditions of confinement due process claim. He asserts that Defendant Clendenin's intentional decisions to limit or restrict access to resources typically afforded to prisoners (*e.g.*, internet access and devices, packages and nutritional supplements) have been denied to him as a civil detainee. He contends Clendenin's actions have caused him harm and that she ignored reasonable alternatives to abate the risk of harm, and that those actions are not supported by reasonable professional judgment nor are the actions relevant to state interests.

### *Due Process: Failure to Provide Mental Health Treatment*

"[T]he due process clause includes a substantive component which guards against arbitrary and capricious government action, even when the decision to take that action is made through procedures that are in themselves constitutionally adequate." *Halverson v. Skagit Cty.*, 42 F.3d 1257, 1261 (9th Cir. 1994), as amended on denial of reh'g (Feb. 9, 1995) (quoting *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1407 (9th Cir.1989)). States are required "to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released," and to provide "more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000) (citations omitted). Although the state enjoys wide latitude in developing treatment regimens, the courts may take action when there is a substantial departure from accepted professional judgment or when there has been no exercise of professional judgment at all. *Id.* A person committed based on mental incapacity has a

8

due process right to receive "such individual treatment as will give [him] a realistic opportunity to be cured or to improve his ... mental condition ... because, absent treatment, [he] could be held indefinitely as a result of [his] mental illness." *Ohlinger v. Watson*, 652 F.2d 775, 778 (9th Cir. 1980) (internal citations omitted). Thus, a person committed based on mental incapacity has a due process right to receive "such individual treatment as will give [him] a realistic opportunity to be cured or to improve his ... mental condition ... because, absent treatment, [he] could be held indefinitely as a result of [his] mental illness." *Id.* (internal citations omitted).

Although civilly detained persons must be afforded more considerate treatment and conditions of confinement than convicted defendants, where specific standards are lacking, courts may look to decisions defining the constitutional rights of prisoners to establish a floor for the constitutional rights of persons detained under a civil commitment scheme. *Padilla v. Yoo*, 678 F.3d 748, 759 (9th Cir. 2012) (citing *Hydrick v. Hunter*, 500 F.3d 978, 989 (9th Cir. 2007), vacated and remanded on other grounds by 556 U.S. 1256 (2009)). A court also may borrow Eighth Amendment standards to do so. *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998); *Redman v. County of San Diego*, 942 F.2d 1435, 1441 (9th Cir. 1991), abrogated on other grounds by 511 U.S. 825 (1994). But the conditions under which civil detainees are held cannot be harsher than those under which prisoners are detained except where the statute itself creates a relevant difference. *Hydrick*, 500 F.3d at 989 n.7.[2]

The Due Process Clause requires that the nature and duration of the civil commitment must bear some reasonable relation to the purpose for which the individual is committed. *Jones*, 393 F.3d at 931. However, civilly detained individuals can be subject to restrictions that have a legitimate, non-punitive government purpose and that do not appear to be excessive in relation to that purpose. *Bell*, 441 U.S. at 535. "A reasonable relationship between the governmental interest and the challenged restriction does not require an exact fit, nor does it require showing a 'least restrictive alternative.'" *Valdez v. Rosenbalm*, 302 F.3d 1039, 1046 (9th Cir. 2002) (citations

---

[2] The Ninth Circuit also noted that the general body of law for civilly committed individuals should apply to civilly committed sexually violent predators, but in some instances the circumstances of detention and safety considerations must be taken into account so that not all rights are necessarily coextensive with those of other civilly committed persons. *Hydrick*, 466 F.3d at 691.

9

omitted). The only question is whether the defendants might reasonably have thought that the policy would advance its interests. *Id.*; *Jones*, 393 F.3d at 933 ("due process requires that the conditions and duration of confinement ... bear some reasonable relation to the purposes for which persons are committed").

Liberally construing the allegations, Plaintiff states a cognizable claim for failure to treat Plaintiff under the Fourteenth Amendment Due Process clause against Defendant Clendenin, which requires states to provide civilly committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released. Taking Plaintiff's factual allegations as true, Plaintiff has already remained civilly committed since 2017 and has had minimal to no treatment due to Clendenin's policy. Absent a treatment plan and treatment, Plaintiff is left without an opportunity to cure or improve his mental illness and no prospect of ever being released. These facts constitute injury stemming from Clendenin's alleged policy of failure to treat Plaintiff.

### Claim Two

Plaintiff's second cause of action similarly asserts a conditions of confinement due process violation against Defendant Price.[3]

Plaintiff contends Defendant Price is "tortuously liable" because he has "created and maintained Plaintiff's conditions of confinement such that they are punitive in nature." (Doc. 1 at 7.) Plaintiff alleges Price has "failed to adhere to the mandates of CCR Title 9, §§880-884 in that her actions reflect a blanket application to all patients without individualized consideration" to Plaintiff. (*Id.*) Further, Plaintiff contends Price has "failed to follow state and federal statutory and decisional law" and "the punitive nature of his actions where Price's objective was/is to deter conduct already addressed by Penal Code statutes or in retribution based on action of other patients." (*Id.*) Plaintiff asserts the restrictions are "supported by a speculative need for 'safety and security' where this term is used loosely and not in accordance with CCR Title 9, §§880-884, but instead is used as CDCR does for its prisoners (prisoners can be subjected to conditions

---

[3] Legal standards applicable to a claim will not be repeated where previously provided.

amounting to punishment)." (*Id.*) Plaintiff further contends Price has failed to insure Plaintiff's "conditions of confinement are less restrictive than prisoners and failed to take less restrictive options." (*Id.*) He asserts all "statutory and decisional laws cited herein are well established and it is reasonable to expect that Price is/was aware that they exist and that []he is/was not in compliance." (*Id.*) Plaintiff contends Price "is the moving force of violations" of his due process rights protected by the Fourteenth Amendment. (*Id.*)

### *Due Process: Conditions of Confinement*

Liberally construing Plaintiff's complaint, Plaintiff plausibly alleges a conditions of confinement due process claim. He asserts that Defendant Price's intentional decisions to limit or restrict access to resources typically afforded to prisoners (*e.g.*, internet access and devices, packages and nutritional supplements) have been denied to him as a civil detainee. He contends Price's actions have caused him harm, that Price ignored reasonable alternatives to abate the risk of harm, and that those actions are not supported by reasonable professional judgment nor are the actions relevant to state interests.

### *Due Process: Failure to Provide Mental Health Treatment*

Liberally construing the allegations, Plaintiff states a cognizable claim for failure to treat Plaintiff under the Fourteenth Amendment Due Process clause against Defendant Price, which requires states to provide civilly committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released. Taking Plaintiff's factual allegations as true, Plaintiff has already remained civilly committed since 2017 and has had minimal to no treatment due to the policy of Defendant Price. Absent a treatment plan and treatment, Plaintiff is left without an opportunity to cure or improve his mental illness and no prospect of ever being released. These facts constitute injury stemming from Price's alleged policy of failure to treat Plaintiff.

### **Claim Three**

Next, in his third cause of action, Plaintiff alleges that Defendant Clendenin "is tortuously liable" for creating "a treatment program that is inadequate, and that does not give this Plaintiff a reasonable expectation to obtain his liberty," citing to California Welfare and Institution Code §§

5325.1(a) and 7503. (Doc. 1 at 8.)

California Welfare and Institutions Code sections 5325 and 5325.1 list certain rights available to persons with mental illnesses who are involuntarily detained for evaluation or treatment. *See* Cal. Welf. & Inst. Code §§ 5325, 5325.1 (listing rights; *see also* Cal. Penal Code § 1610 (providing that persons confined under this section, which includes SVPs, may be housed in accordance with California Penal Code § 4002 and have a right to "an explanation of rights in the manner prescribed in Section 5325 of the Welfare and Institutions Code").

Liberally construed, Plaintiff's state law claim against Defendant Clendenin plausibly alleges a violation of state law based upon a deprivation of a right provided by the Constitution. *See Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996) ("a violation of state law may not form the basis for a section 1983 action unless it causes a deprivation of a right provided by the Constitution").[4]

### Claim Four

Lastly, Plaintiff alleges that Defendant Price "is tortuously liable" for creating "a treatment program that is inadequate, and that does not give this Plaintiff a reasonable expectation to obtain his liberty," citing to California Welfare and Institution Code §§ 5325.1(a) and 7503. (Doc. 1 at 8.)

Liberally construed, Plaintiff's state law claim against Defendant Price plausibly alleges a violation of state law based upon a deprivation of a right provided by the Constitution. *See Lovell*, 90 F.3d at 370.

/ / /

/ / /

/ / /

---

[4] "[T]he Constitution does not compel states to follow their own laws," *Allison v. Snyder*, 332 F.3d 1076, 1078 (7th Cir. 2003) (citing, inter alia, *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 202 (1989)), "[n]or does it permit a federal court to enforce state laws directly." *Id.* at 1079 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)).

### IV.  CONCLUSION AND ORDER

For the reasons set forth above, the Court finds that Plaintiff's complaint states cognizable claims for relief against Defendants Clendenin and Price. The Court will issue a separate order directing service of the complaint.

IT IS SO ORDERED.

Dated:   **April 28, 2023**

UNITED STATES MAGISTRATE JUDGE